**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Joseph Legat,<br><br>           Plaintiff,<br><br>v.<br><br>Legat Architects, Inc.,<br><br>           Defendant. | No. 20 CV 06830<br><br>Honorable Nancy L. Maldonado |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joseph Legat filed a six-count complaint against Legat Architects, Inc. ("Defendant"), alleging violations of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as claims for common law service mark infringement and a declaratory judgment. After answering the complaint, Defendant moved for judgment on the pleadings, arguing that Legat's claims were barred by the doctrine of res judicata because Legat had already brought similar claims against Defendant in state court, and had those claims dismissed. The Court issued an order on June 23, 2021 granting the motion in part; the Court agreed with Defendant that the federal and state cases involved the same parties and causes of action, but also found that it was unclear whether there had been a final judgment for the purposes of res judicata, because Legat was in the process of appealing the state court's dismissal of his claims. The Court therefore stayed the federal action pending Legat's appeal. (Dkt. 29.)[1] The Illinois Appellate Court ultimately affirmed in part and reversed in part the state court ruling, and remanded the case to the state court for further

---

[1] In citations to the docket, page numbers are taken from the CM/ECF headers.

1

proceedings on Legat's surviving claims.

Defendant has now renewed its request for judgement on the pleadings on res judicata grounds, arguing that the Illinois Appellate Court ruling, which Legat did not appeal, constitutes a final judgment on the merits barring his related claims in this federal action. (Dkt. 55.) Legat, on the other hand, contends that there still has not been a final judgment, because his state court case remains active with respect to certain causes of action. For the reasons explained in this Opinion and Order, the Court grants Defendant's motion. In short, the Court agrees that the Illinois Appellate Court ruling is a final judgment on the merits for the purposes of res judicata. As the Court has already found that the other elements of res judicata are met, Defendant is entitled to judgment as a matter of law, and the case must be dismissed.

## Background[2]

Plaintiff Joseph Legat is a licensed architect and a member of the American Institute of Architects, and has been a practicing architect since 1963. (Dkt. 1 ¶¶ 4–5.) Legat founded his own architecture firm in 1964, and then in 1979 incorporated a successor entity to his original firm, Defendant Legat Architects, Inc. (*Id.* ¶ 9.) From 1979 to 1997, Legat was the sole owner of Defendant. (*Id.*) Starting in 1997, Legat began to transition the ownership of his firm to other architects employed at Defendant, entering into a series of stock agreements selling his shares to other individuals and back to the company. (*Id.* ¶12.) Legat also entered into a consulting agreement to continue working for Defendant as an architect. (*Id.* ¶¶ 11–13.) Years later, Legat would have a series of disagreements and disputes with the new leadership of Defendant, eventually leading to Defendant unilaterally terminating its business relationship with Legat in

---

[2] The Court takes the factual background from the allegations in the Complaint (Dkt. 1), which the Court accepts as true for the purpose of the present motion. *See Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012). The Court recites the procedural history of the state court action as it was summarized in the Court's prior opinion on Defendant's first motion for judgment on the pleadings. (Dkt. 29.)

December 2017. (*Id.* ¶¶ 19–25.)

On October 10, 2018, Legat filed suit against Defendant in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, alleging breach of contract in relation to Defendant terminating its relationship with him. (Dkt. 29 at 1.) Legat's initial complaint was dismissed without prejudice in February 2019, and he proceeded to amend his complaint multiple times, repleading his contract claim and adding several additional claims, including a claim for unjust enrichment. (*Id.*) Relevant here, Legat's unjust enrichment claim includes allegations that Defendant has received numerous benefits, including increased architectural commissions and prestige, from the use of Legat's surname in Defendant's business name, both during the time Legat was still employed and after Legat departed in 2017. (*See* Dkt. 38-1 at 22–23; Dkt. 21-6 at 17–18.) Legat claims that he did not consent or give Defendant authorization to use his name in association with promoting Defendant's architecture business, and that he has suffered a detriment to his own reputation and ability to secure business based on Defendant's continued use of his name as part of their own business name. (*See id.*) Legat separately alleged that Defendant was unjustly enriched based on his consulting work for Defendant between 1997 and 2017, and for failing to repay a $500,000 loan he had previously made to the company. (Dkt. 38-1 at 23.)

Defendant moved to dismiss Legat's unjust enrichment claim based on the use of his name on the grounds that, after Legat sold his stock and ownership stake in the business in 1997, Legat retained no right to the firm's "Legat" brand name, which became an asset of the Defendant company. (Dkt. 29 at 2.) Defendant thus argued that, as a matter of law, the right to the "Legat" brand name passed to the new owners of the company, and Legat's unjust enrichment claim based on Defendant's use of the name was barred. (*Id.*) In August 2020, after briefing and oral argument on Defendant's motion, the state Circuit Court granted Defendant's motion to dismiss, agreeing

3

with Defendant that Legat's express contractual sale of his ownership stake in the company precluded his unjust enrichment claim based on the use of his name in Defendant's business. (*Id.*; Dkt. 38-1 at 6.) Legat appealed the dismissal of his unjust enrichment claim based on the use of his tradename, as well as the Circuit Court's separate dismissal of his contract claims and the other portions of his unjust enrichment claim related to his employment and loan, to the Illinois Appellate Court. (*Id.* at 6–7.)

Shortly after the Circuit Court dismissed Legat's claim, while he was in the process of appealing, Legat initiated the instant federal lawsuit in this Court on November, 18 2020. (Dkt. 1.) In his Complaint, Legat alleges that he owns a valid trademark registration for his surname "Legat" with respect to architectural services and architectural consultancy services. (*Id.* ¶ 8.) Similar to his unjust enrichment claim in the state court action, Legat claims that Defendant has used, and continues to use, Legat's surname without his authorization as part of its corporate name Legat Architects, and to promote its architectural services. (*Id.* ¶¶ 10, 32.) Legat brings claims for trademark infringement and unfair competition under the Lanham Act, common law service mark infringement, violation of the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act, as well as a claim for declaratory judgment. (*Id.* ¶¶ 7–14.) Legat seeks damages, attorneys' fees, and an injunction preventing Defendant from continuing to use Legat's surname as part of its business. (*Id.* ¶ 13.)

Defendant filed its answer to Legat's federal Complaint on January 19, 2021 asserting the defense of res judicata and bringing several counterclaims, (Dkt. 8.) Defendant subsequently filed a motion for judgment on the pleadings, arguing that Legat's trademark and related state law statutory and common law claims were all barred under the doctrine of res judicata because the Illinois state court had dismissed Legat's unjust enrichment claim based on the same underlying

4

allegations that Defendant used Legat's surname without authorization. (Dkt. 29 at 2–3.) Defendant thus requested dismissal of Legat's federal case, or alternatively, a stay pending the outcome of the state court appeal.

After briefing, the Court issued an order on June 23, 2021 granting Defendant's motion in part and ordering a stay of the federal case pending the state court appeal. In its opinion, the Court agreed with Defendant that several of the elements of res judicata were met, including that the state and federal cases involved the same parties and same causes of action, and that while the cases involved different legal theories, both cases arose from the same operative facts relating to the use of Legat's name. (*Id.* at 3–4.) But the Court concluded that a necessary element of res judicata was not yet established: whether there had been a final judgment on the merits in the state case in light of Legat's pending appeal. (*Id.*) The Court therefore stayed this federal case until such time as the state court appeal was resolved.

On June 24, 2022, the Illinois Appellate Court issued an order affirming the state court dismissal of "all portions of plaintiff's unjust enrichment claim concerning defendant's use of plaintiff's name." (*See* Dkt. 38-1 at 28.) The Appellate Court affirmed the Circuit Court's conclusion that Legat did not retain ownership of the "Legat" or "Legat Architects" trade names or service marks after he sold his stock ownership interests in Defendant, because "the transfer of property and effect of a business carries with it the exclusive right to use such trademarks or tradenames as have been used in such business." (*Id.* at 25) (citation omitted). Thus, when Legat sold all his shares to Defendant and the other architects at the firm, he "sold defendant the exclusive right to continue using his former business's trade name—which incorporated his trade name." (*Id.*) Separately, the Appellate Court reversed the Circuit Court's dismissal of Legat's claims for breach of contract and promissory estoppel, as well as the dismissal of a portion of Legat's unjust

5

enrichment claim. (*Id.* at 13, 17, 29.) Specifically, the Appellate Court reversed the lower court's dismissal of the portion of Legat's unjust enrichment claim that was based on his employment with Defendant between January 2007 and December 2017. (*Id.*)

In light of the Appellate Court decision, Defendant has now renewed its motion for judgment on the pleadings on res judicata grounds. (Dkt. 55.)[3]

## Discussion

The determination of whether a state court judgment precludes claims in a subsequent federal case depends on the preclusion rules of the particular state. 28 U.S.C. § 1738; *Rogers v. Desiderio*, 58 F.3d 299, 301 (7th Cir. 1995). In Illinois, the "doctrine of res judicata [claim preclusion] provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008). The doctrine "bars not only what was actually decided in the first action but also whatever could have been decided." *Id.*

The Court has already found that two of the requirements for res judicata are established: the state court action involves the exact same parties as the federal case and involves the same causes of action. (Dkt. 29 at 3.) As the Court previously explained, Legat's unjust enrichment claim in state court and his claims in the instant federal suit "all stem from the same operative facts: plaintiff's allegations that defendant has wrongfully used the LEGAT name and trademark since 2017." (*Id.* at 3–4.) The fact that Legat has recast his claims in federal court under the Lanham

---

[3] After the Illinois Appellate Court issued its decision, the parties filed competing position statements on whether the stay in this federal case should be lifted. (Dkt. 43; Dkt. 44). Defendant stated in its position statement that the case should be dismissed on res judicata grounds, or alternatively continue to be stayed under the *Colorado River* abstention doctrine. (Dkt. 43 at 1.) The case was subsequently reassigned to the undersigned District Judge on October 3, 2022. (Dkt. 45.) After several further statuses, during which Defendant repeated its position that the judgment of the state court was now final for res judicata purposes, the Court granted Defendant leave to file a renewed motion for judgment on the pleadings on the limited issue of whether the Illinois Appellate Court decision was a final judgment for the purposes of claim preclusion. (Dkt. 54.)

Act or other state law statutory or common law claims does not change the fact that all his claims arise from the same facts and therefore constitute the same causes of action. (*Id.*)

The parties do not seek to relitigate these issues in the current briefing. Instead, the only question before the Court now is whether there has been a final judgment on the merits in the state court action in light of the June 2022 Illinois Appellate Court ruling. Under Illinois law, an order is final for res judicata purposes if it "either terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate branch thereof." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill., 2012). As the litigation between Legat and Defendant in state court is ongoing, the question here is whether the Appellate Court's order terminated or disposed of Legat's rights on a "separate branch" of the underlying controversy. In general, "[a]n order disposes of a separate branch of a controversy when the bases for recovery of the counts which are dismissed are different from those which are left standing." *Id.* at 979 (citation omitted). On the other hand, the dismissal of only certain theories or allegations under a single claim or basis of recovery is not a final order for res judicata purposes. *Id.*

In *Wilson*, relied on by Legat, for example, the plaintiffs were a mother and son who brought a medical malpractice action against several doctors at a hospital, based on injuries the son suffered during a surgery. *Id.* The plaintiffs also sought to hold the hospital liable under two alternative agency theories, arguing that the doctors were either actual or apparent agents of the hospital. *Id.* at 974. The trial court granted partial summary judgment to the hospital, finding that they were not actual agents of the hospital, but the court also found that there was a question of fact as to whether the doctors were apparent agents. *Id.* The plaintiffs voluntarily dismissed the action and subsequently refiled the suit a year later. *Id.* The hospital moved to dismiss the second case on res judicata grounds based on the prior summary judgment ruling that the doctors were not

7

actual agents of the hospital. *Id*. On appeal, the Illinois Supreme Court ultimately held that the original summary judgment order was not a final judgment on the merits. *Id.* at 980–81. The court noted that "actual agency" and "apparent agency" are not separate and distinct causes of action, but just different means of establishing liability against a principal based on the negligence of an agent. *Id.* at 980. In other words, actual or apparent agency are merely different theories by which a plaintiff can establish one of the elements under the same claim: negligence. *See id.* Thus, the trial court's order resolving the issue of actual agency, but not apparent agency, did not constitute final judgment on a separate branch of the controversy, but rather only dismissed certain grounds of the plaintiffs' single claim of negligence against the hospital. *Id.* at 980–81. Put simply, the plaintiffs' negligence claim against the hospital on a theory of principal-agent liability had not been completely resolved, as the plaintiffs could still potentially prove that the employees were apparent agents of the hospital, and there had thus been no final judgment. *Id.*

Legat claims that *Wilson*'s reasoning as applied here demonstrates that the Illinois Appellate Court order did not resolve a "separate branch" of the controversy. Just as the trial court in *Wilson* did not resolve the entire negligence claim, but merely one basis for establishing principal-agency liability, Legat contends that the Appellate Court did not resolve his entire unjust enrichment claim, but merely dismissed certain factual bases for the claim specifically related to the use of his name. (Dkt. 56 at 5.) According to Legat then, the Appellate Court order is not final because his unjust enrichment claim is still proceeding under a different theory of recovery based on his employment, just as the order in *Wilson* was not final because the plaintiffs' negligence claim against the hospital was still able to proceed under a different theory of agency liability.

The Court is not convinced and finds that the Appellate Court resolved Legat's rights with respect to a "separate branch" of the underlying state court action. Specifically, it completely

8

resolved Legat's claims related to the use of his surname in association with Defendant's business. Legat's casting of his claims as a "single" action for unjust enrichment is unavailing. That Legat combined the allegations related to the use of his name with other unrelated allegations about his employment with Defendant, or allegations about a loan, under a single joint *count* for unjust enrichment does not collapse all of those unrelated factual allegations into a single *cause of action* for unjust enrichment. In *Wilson*, the Illinois Supreme Court explained that the terms "claim" or "cause of action" refer to " [t]he aggregate of operative facts giving rise to a right enforceable by a court." *Wilson*, 981 N.E.2d at 980 (citing Black's Law Dictionary 281 (9th ed. 2009)); *see also id.* at 975 ("A cause of action is defined by the facts that give rise to a right to relief. Though one group of facts may give rise to a number of different theories of recovery, there remains a single cause of action."). The question of what constitutes separate causes of action therefore does not turn on the technical manner in which they are pled, but depends on whether the underlying facts give rise to separate rights of recovery, or just one right of recovery under different theories. In *Wilson*, then, the separate theories of actual and apparent agency were not distinct claims for res judicata purposes because they did not give rise to independent rights of relief against the hospital, but were just different theories to establish one element as part of the single right of relief of negligence.

      Here however, while Legat pled unjust enrichment as a single count, that count actually comprised three separate and distinct causes of action, i.e. it is comprised of three distinct sets of operative facts: unjust enrichment based on a $500,000 loan; unjust enrichment based on Legat's employment and consulting with Defendant; and unjust enrichment based on Defendant's use of Legat's trade name. Each of these sets of operative facts have nothing to do with each other, but rather relate to separate incidents and injuries, and give rise to independent claims for unjust

9

enrichment, that is, they give rise to separate rights of recovery against Defendant. Put another way, Legat could have pled these claims as three distinct counts, and could have theoretically recovered damages under each of these three unjust enrichment theories independent of one another (assuming he was successful on all three). This right to potential independent relief demonstrates why Legat's three theories of unjust enrichment are separate causes of action for the purposes of res judicata, and distinguishes the case from *Wilson* where the actual and apparent agency theories did not give rise to independent rights of recovery, but were merely different theories of establishing liability under a single right of recovery for negligence. *See, e.g.*, *Bd. of Managers of Roseglen Condo. Ass'n v. Coleman Floor Co.*, 2013 IL App (2d) 121274-U, ¶ 37, 2013 WL 6198297, at *9 (Ill. App. Ct. 2013) (finding claims for breach of implied warranty of habitability and breach of implied warranty of good workmanship were district claims for res judicata purposes, because the plaintiff "could recover under either theory independently," which distinguished the case from *Wilson* where the plaintiffs could not recover independently under both actual and apparent agency).

In short then, the mere fact that Legat pled three different factual bases for unjust enrichment under one joint count does not make his claim a single cause of action for res judicata purposes.[4] Rather, the Court concludes that each of Legat's three theories of unjust enrichment in his state court case are actually three separate and distinct claims, or separate branches of the

---

[4] Imagine, by way of comparison, a plaintiff with two negligence claims related to two separate injuries received while visiting a retail store on the same day: a slip and fall on ice outside leading to a leg injury and a separate slip and fall on spilled product in the store leading to an arm injury. It should be obvious that those two negligence claims are separate causes of action or branches of the controversy for res judicata purposes. While each claim would require the same general elements of proof of duty, breach, causation, and damages, they would be resolved separately on separate facts, and the plaintiff could recover damages on each negligence claim independent of the resolution of the other, regardless of whether the causes of action were pled in one count or separate counts. In short, that both claims might be styled as claims for "negligence" under a single count does not make them one cause of action for res judicata purposes. Similarly here, Legat's multiple claims for unjust enrichment are not one cause of action merely because they each involve the same general elements of proof and are pled in a single count; they are plainly separate causes of action because they arise from separate facts, injuries, and give right to independent recoveries.

underlying controversy. It is ultimately irrelevant that Legat's claim for unjust enrichment based on his employment at Defendant is ongoing in state court, because the June 2022 Illinois Appellate Court order conclusively resolved the separate and distinct branch involving Legat's unjust enrichment claim based on the use of his trade name, a claim which the Court has already concluded involves the same cause of action as Legat's trademark and state law unfair competition claims at issue in this case. As Legat has made no attempt to appeal or seek reconsideration of that Appellate Court order, it is undoubtably final; Legat can no longer recover in state court for unjust enrichment based on the use of his trade name. The Court thus agrees with Defendant that the order carries preclusive effect and bars Legat from bringing the claims in this case based on the same set facts.

In sum, the Court concludes that Legat's claims are barred by res judicata, and this case must be dismissed.

## Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is granted. Judgement is entered in favor of Defendant Legat Architects, and this case is dismissed with prejudice.

ENTERED: 5/21/24

_____
Nancy L. Maldonado
United States District Court Judge